**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Juan DELGADO, Emilio Albelo, Juan Carlos Riverol, Tomas Raul Hernandez, Defendants–Appellants.**

No. 92–4141.

United States Court of Appeals, Eleventh Circuit.

July 5, 1995.

---

1358

Arthur Joel Berger, Miami, FL, for Delgado.

Gerardo A. Remo, Jr., Miami, FL, for Albelo.

Robert L. Moore, Miami, FL, for Riverol.

J. Rafael Rodriguez, Miami, FL, for Hernandez.

James G. McAdams, III, U.S. Atty., Miami, FL, Neil Karadbil, Barbara A. Ward, Hal Goldsmith, Asst. U.S. Attys., West Palm Beach, FL, for appellee.

Before COX and BLACK, Circuit Judges, and FAY, Senior Circuit Judge.

FAY, Senior Circuit Judge:

This appeal arises from a four-count conviction on assorted drug charges against Appellants/Co–Defendants Delgado and Albelo, a two-count conviction against Appellant/Co–Defendant Hernandez, and a one-count conviction against Appellant/Co–Defendant Riverol. Except as to Hernandez, the indicted activity involved a conspiracy and a substantive count for both importation and possession with intent to distribute at least five kilograms of cocaine.

The appellants allege myriad errors in the trial.

## I. BACKGROUND

### i. Procedure

In May of 1988 a federal grand jury in Miami returned a six-count indictment charging Delgado and five other men with the following: conspiracy to import at least five kilograms of cocaine; importation of at least five kilograms of cocaine; conspiracy to possess with intent to distribute at least five kilograms of cocaine; and possession with intent to distribute at least five kilograms of cocaine. Other charges against Delgado alone were severed before trial.

In March of 1990 another grand jury returned a superseding indictment, adding Al-

belo, Riverol, and four other men as defendants in each of the four counts. Hernandez and another man were added as defendants only in the conspiracy and substantive counts of possession with intent to distribute. In July of 1991 Delgado, Albelo, Riverol, Hernandez, and another man went to jury trial. The jury convicted Delgado, Albelo, and Hernandez on all counts; the jury convicted Riverol of conspiring to import at least five kilograms of cocaine, but acquitted him on all other counts; the jury acquitted the fifth man on all counts.

### ii. Facts

Evidence admitted at trial permitted the jury to find the following facts:

Early in 1989 Emilio Albelo contacted Manual Goyanes about working for Juan Antonio Delgado as a cocaine smuggler. Delgado was in Colombia visiting a federal fugitive who could provide 300 kilograms of cocaine. The cocaine was to be picked up in Colombia, flown to Treasure Cay in The Bahamas, and then taken by fast boats to South Florida. Delgado and the fugitive's wife were to receive the cocaine in the United States.

While planning the conspiracy, Delgado held several meetings, including one at a Taco Bell in Miami. The conspirators also met three to four times a week at Delgado's home. In addition, they met three to four times a week at Riverol's farm in Homestead, where they used Riverol's high-powered radio to contact the federal fugitive in Colombia. The conspirators used the radio because it was more difficult to trace than a phone call.

Unfortunately for the conspirators, the pilots they had chosen to smuggle the drugs were arrested in Nassau, The Bahamas, on an unrelated drug run and the plane was seized by Bahamian law enforcement. Next, the conspirators contacted two American friends, Mike and Dave. Unbeknownst to the conspirators, Mike and Dave were undercover operatives working for the Drug Enforcement Administration ("DEA"). They reported the contact to the DEA and began to set up a sting operation. The conspirators offered Mike and Dave $200,000 to fly 500 kilograms of cocaine from Colombia to Trea-

sure Cay. Later, the expected payment was increased to $250,000 plus $15,000 for expenses, and the load was increased to 600 kilograms.

On May 10, 1989, Mike and Dave flew to Colombia in accord with the plan. In Colombia, however, they were unable to make radio contact with anyone. They returned to Florida and reported this trouble to the conspirators. The conspirators confirmed the problem in Colombia and scheduled a second attempt.

On May 19, 1989, Mike and Dave again left for Colombia. As they had done on the first trip, they stopped at Guantanamo Naval Base to be checked by DEA agents before continuing to Colombia. One conspirator waited in Treasure Cay to make radio contact with the plane; two others, one of whom was Albelo, readied themselves in Fort Lauderdale with a boat to pick up the cocaine once it reached The Bahamas.

Mike and Dave landed in Colombia at 2:45 a.m. Armed individuals helped Dave load green padlocked duffel bags onto the aircraft. He then flew back to Guantanamo, where he met a DEA Special Agent. The DEA unloaded the bags, which contained around 600 kilograms of cocaine, counted and initialed them. DEA pilots and the Special Agent flew the cocaine into West Palm Beach.

Meanwhile, Mike and Dave flew towards Treasure Cay, where the DEA had placed a Coast Guard helicopter to create a cover story to explain why Mike and Dave could not land in The Bahamas. The conspirator stationed at Treasure Cay saw the helicopter, warned Mike and Dave by radio not to land, and instructed them to drop the cocaine onto Abaco Island. Dave said he could not do that and would take the cocaine into the United States. Mike and Dave landed their empty plane at Palm Beach International Airport and notified the conspirators that they had arrived safely and needed to know what to do with the cocaine.

The conspirators were unnerved, called a meeting, and debated whether to take the cocaine. Some members were concerned the DEA had engineered the successful flight into the United States. Finally they decided

two conspirators would pick up the cocaine the following day while the remaining conspirators provided surveillance and protection. Meanwhile, the DEA planned their own surveillance of the controlled delivery.

The delivery took place in a Boca Raton shopping center. Mike and Dave met with the conspirators and got their approval to drive to another location to place the cocaine in a van that, unbeknownst to the conspirators, had been equipped with a kill switch by a DEA agent. Dave returned with the van loaded with 570 kilograms of cocaine and gave the keys to one of the conspirators. Two conspirators drove the van out of the parking lot and the others followed in several cars. DEA agents followed as well. Once the van reached Miami the DEA activated the kill switch, stopping the van, and arrested the two men on board. They took a digital pager from one of them.

At 10:00 p.m. the pager was activated and the number to a pay phone was left. The DEA, in possession of the beeper, traced the number and dispatched agents. Upon arrival the agents recognized Delgado and other conspirators and their cars. DEA agents arrested Delgado, Albelo and others. Hernandez and Riverol were not arrested; the government contends they got away before the agents could identify them.

A couple months later, and unrelated to the events charged in the indictment, Hernandez was arrested while trying to buy twelve kilograms of cocaine from an undercover police officer. As a result he was convicted of conspiring to distribute and attempting to possess with intent to distribute over five kilograms of cocaine.

## II. STANDARDS OF REVIEW

This appeal requires review of findings of fact, conclusions of law, and discretionary rulings on whether to admit or exclude evidence.

■ We will not disturb the trial judge's decision to admit or exclude Fed.R.Evid. 404(b) "other crimes" evidence absent a clear showing of abuse of discretion. *United States v. Miller,* 959 F.2d 1535, 1538 (11th Cir.1992) (en banc).

■ We will not disturb the trial judge's Jencks Act findings absent clear error. *United States v. Williams,* 875 F.2d 846, 853 (11th Cir.1989).

■ We review evidence sufficiency, a question of law, *de novo. United States v. Kelly,* 888 F.2d 732, 739 (11th Cir.1989). We view the evidence in the light most favorable to the government including all reasonable inferences and credibility judgments. *See Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). We ask whether a reasonable trier of fact, when choosing among reasonable constructions of the evidence, could have found the defendant guilty beyond a reasonable doubt. *Kelly,* 888 F.2d at 740.

■ Because improper vouching is a mixed question of law and fact, and because the defendants objected contemporaneously at trial, our review is plenary. *United States v. Eyster,* 948 F.2d 1196, 1206 (11th Cir. 1991). Prosecutorial misconduct requires a new trial only if we find the remarks (1) were improper and (2) prejudiced the defendants's substantive rights. *United States v. Cannon,* 41 F.3d 1462, 1466 (11th Cir.1995). We review them in context and assess the probable jury impact. *Id.*

■ We review a trial judge's response to a jury query during deliberations for an abuse of discretion. *United States v. McDonald,* 935 F.2d 1212, 1221–22 (11th Cir. 1991).

■ A sentencing court's determination under the Federal Sentencing Guidelines of a defendant's role in the offense is a factual finding. *United States v. Castillo–Valencia,* 917 F.2d 494, 501 (11th Cir.1990), *cert. denied,* 499 U.S. 925, 111 S.Ct. 1321, 113 L.Ed.2d 253 (1991). We do not disturb the sentencing court's fact findings absent clear error. 18 U.S.C. § 3742(e); *United States v. Davis,* 902 F.2d 860, 861 (11th Cir.1990). Nonetheless, we review *de novo* the sentencing court's Federal Sentencing Guidelines application to those facts. *United States v. Rodriguez,* 959 F.2d 193, 195 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 649, 121 L.Ed.2d 563 (1992).

## III. ANALYSIS

### A. The Jencks Ruling

#### i. Government Witness Costa

■ The chief error alleged by Riverol and Delgado is the district court's denial of a timely motion for disclosure of material they allege falls under the Jencks Act, 18 U.S.C. § 3500. Upon review of the record we find no judicial error. Defense counsel failed to lay the predicate required to invoke the Jencks Act protections.

Jaime Costa, a cooperating co-defendant, testified for the government against Riverol, Delgado, and the other defendants. Costa's direct testimony comprised his own drug crimes for the nine years preceding his arrest. Defense counsel requested the DEA agent's notes from debriefings of Costa on these other crimes. The prosecutor responded that neither he nor the DEA agent in the instant case had participated in the debriefings and neither of them had seen the requested DEA-6's because they exclusively concerned the other, unrelated crimes. Defense counsel argued they were entitled to the reports because anything tending to show bias or prejudice relates to the subject matter of the witness's testimony as required by Jencks. In the alternative, defense counsel requested the reports be produced and sealed as part of the appellate record. The trial judge denied the defense motion.

The Jencks Act applies to any witness statement in the United States's possession that relates to the subject matter of the witness's direct testimony. 18 U.S.C. § 3500. Statement, however, is a legal term of art. Agents's reports of witness interviews, or debriefings, are not Jencks statements unless they are substantially verbatim, contemporaneously recorded transcripts, or are written by the witness and signed or otherwise ratified by the witness. 18 U.S.C. § 3500(e)(1)–(2); *United States v. Cole*, 634 F.2d 866, 867 (5th Cir.),[1] *cert. denied*, 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981); *United States v. Gaston*, 608 F.2d 607, 611 (5th Cir.1979).

■ Further, the defense must establish that the document falls within the reach of Jencks. *Gaston*, 608 F.2d at 611. The district court need not examine the reports *in camera* when nothing before it suggests a verbatim account or adoption by the witness. *Id.* When defense counsel fails to establish Jencks applies, the trial court does not err in refusing to order the government to produce reports for inclusion in the record. *Id.* Jencks does not authorize fishing expeditions, *United States v. Graves*, 428 F.2d 196, 199 (5th Cir.), *cert. denied*, 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269 (1970); the foundation must be laid before the protections are triggered.

In the instant case, defense counsel failed to lay that predicate. The only defense lawyer to attempt the foundation, counsel for Hernandez, elicited testimony that the witness had never adopted or approved the reports; the agent never read back his notes or asked Costa to confirm their accuracy (R. 12:1342). In addition, the defense proffered nothing to show the statements were verbatim transcripts. Based on these facts and the controlling caselaw, we conclude the trial court properly found the statements did not come under the Jencks Act and therefore were not subject to compelled production.

#### ii. "Other Crimes" Evidence Against Hernandez

■ Hernandez argues the trial court erred in denying his motions to strike or dismiss for alleged violations of the Jencks Act when the government did not provide transcripts of prior grand jury and trial testimony by the 404(b) witness. *See* III.B. below. We disagree.

■ The following factors impel us to conclude the error, if any, was harmless: Jencks Act statements are strictly limited to impeachment. *Palermo v. United States*, 360 U.S. 343, 349, 79 S.Ct. 1217, 1223, 3 L.Ed.2d 1287 (1959). The most Hernandez could have achieved with the requested statements was to discredit the agent who gave

---

**1.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all cases decided by the former Fifth Circuit, including both Units A and B, before October 1, 1981.

404(b) testimony regarding the separate, later, unrelated crime. Most important, independent evidence linking Hernandez to the crimes charged in the instant case was overwhelming. *See* III.C.ii. below. Strictly applying the harmless error standard, *see Goldberg v. United States,* 425 U.S. 94, 111 n. 21, 96 S.Ct. 1338, 1348 n. 21, 47 L.Ed.2d 603 (1976), we find no reversible error.

## B. Evidentiary Rulings

■ Approximately two months after the culmination of the crimes charged in this case, Hernandez was arrested for conspiracy and attempt to possess with intent to distribute at least five kilograms of cocaine. The following year Hernandez went to trial and was convicted of both the conspiracy and attempt counts. This conviction did not relate to the two counts charged against Hernandez in the instant case. Hernandez argues the district judge violated his right to a fair trial by admitting this Fed.R.Evid. 404(b) "other crimes" evidence in the case on appeal. We disagree.

■ First, we note the principles governing what is commonly referred to as other crimes evidence [2] are the same whether the conduct occurs before or after the offense charged, and regardless of whether the activity might give rise to criminal liability. *United States v. Beechum,* 582 F.2d 898, 903 n. 1 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Thus, that the conduct and conviction at issue occurred after the crimes charged against Hernandez here does not change our analysis. We look to *Beechum,*[3] the seminal case in any Eleventh Circuit 404(b) analysis, and its progeny to discern whether the district judge abused his discretion in admitting the other crimes evidence against Hernandez.

*Beechum,* as expounded upon in *United States v. Miller,* 959 F.2d 1535 (11th Cir.) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 382, 121 L.Ed.2d 292 (1992), establishes a three-part test to evaluate the admissibility of Rule 404(b) evidence: First, the evidence must be relevant to an issue other than the defendant's character; Second, the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; Third, the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403. *See Miller,* 959 F.2d at 1538.

■ The extrinsic act introduced against Hernandez involves a conviction: the second prong being met, we test only the first and third prongs. We have no trouble finding the first prong is met. A defendant who enters a not guilty plea makes intent a material issue, imposing a substantial burden on the government to prove intent; the government may meet this burden with qualifying 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue. *See United States v. Cardenas,* 895 F.2d 1338, 1342 (11th Cir.1990). Hernandez presented a "mere presence" defense, forcing the government to prove his criminal intent so as to negate any innocent explanation for his presence. The other crimes evidence went to intent, not character.

Moreover, in satisfaction of the first prong, the evidence was relevant to intent. We conclude this by comparing the defendant's state of mind in committing both the extrinsic and charged offenses. *Beechum,* 582 F.2d at 911. *Beechum* reasons that "because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense." *Id.* at 912. In the instant case, the elements of the extrinsic conviction and the crimes charged are identical, except the extrinsic conviction involved the inchoate crime of attempt rather than actual possession. The state of mind required for both offenses is the same, making the extrinsic crime relevant to the charged crime. *United States v. Kopituk,* 690 F.2d 1289, 1334 (11th Cir.1982), *cert. denied,* 463 U.S. 1209, 103 S.Ct. 3542, 77

---

**2.** We will refer to the unrelated conviction as "other crimes evidence" and "extrinsic offense or crime" interchangeably.

**3.** The United States Supreme Court endorsed the *Beechum* analysis in *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

L.Ed.2d 1391 (1983). Accordingly, we find Hernandez's extrinsic conviction is relevant to his intent in the case at hand.

■■ Likewise, the other crimes evidence meets the third prong of the *Beechum* test. Its probative value is not substantially outweighed by any prejudice to Hernandez. Hernandez argues that because the 404(b) testimony formed the bulk of the evidence against him its prejudice substantially outweighed any probative value. Hernandez's counsel misreads the law. While the strength of the government's case regarding intent is important in comparing probative value and prejudice, "[t]he greater the government's need for evidence of intent, the more likely that the probative value will outweigh any possible prejudice." *United States v. Hicks,* 798 F.2d 446, 451 (11th Cir.1986), *cert. denied,* 479 U.S. 1035, 107 S.Ct. 886, 93 L.Ed.2d 839 (1987); *see also United States v. Diaz–Lizaraza,* 981 F.2d 1216, 1225 (11th Cir.1993); *Cardenas,* 895 F.2d at 1344.

Hernandez further argues that the lack of similarity in the drug crimes—one involved a major, multi-million dollar importation while the other involved a comparatively small amount purchased from an undercover law enforcement agent in the states—renders the evidence far more prejudicial than probative. We disagree. In *Cardenas* this Court iterated that when other crimes evidence goes to intent rather than identity a lesser degree of similarity between the charged crime and the uncharged crime is required. *See id.,* 895 F.2d at 1342. Here, "the extrinsic offenses were very similar to the charged offenses in their overall purpose—trafficking in cocaine." *Hicks,* 798 F.2d at 451 (upholding Rule 404(b) admissibility of prior dealing in substantially smaller amounts of cocaine). The government introduced the other crimes evidence to counter Hernandez's mere presence defense and prove his intent. We find the extrinsic conviction to be highly probative.

Moreover, our Circuit has found that extrinsic drug offenses do not tend to incite a jury to an irrational decision. *See Hicks,* 798 F.2d at 452; *United States v. Richardson,* 764 F.2d 1514, 1523 (11th Cir.), *cert. denied,* 474 U.S. 952, 106 S.Ct. 320, 88 L.Ed.2d 303 (1985). We cannot conclude the probative value of the other crimes evidence introduced at trial was substantially outweighed by any unfair prejudice to Hernandez. We find that the evidence meets the third prong of the *Beechum* test.

Having found each prong of the *Beechum* test met, we conclude the trial judge did not abuse his discretion by admitting the other crimes evidence to prove Hernandez's intent to both conspire and possess with intent to distribute cocaine.

### C. Sufficiency of the Evidence

#### i. *Delgado*

■■ The jury convicted Delgado under 18 U.S.C. § 2 and 21 U.S.C. § 952(a). The latter is a substantive charge of importing a controlled substance into the United States; the former is an aiding and abetting charge. Delgado argues that because Mike and Dave flew the cocaine into the United States Naval Base at Guantanamo Bay, Cuba, where the DEA agents took over and brought it into the United States, the statutory requirement of importing "into the United States from any place outside thereof," 21 U.S.C. § 952(a), has not been met and cannot premise an aiding and abetting conviction.

We disagree. This Circuit long ago settled the question whether a government assisted or accomplished importation is an innocent act that prevents a defendant from being guilty of the crime as an aider and abetter. We held it is not an innocent act, and the defendant may be found guilty as an aider and abetter. *Haynes v. United States,* 319 F.2d 620 (5th Cir.1963); *accord United States v. Meinster,* 619 F.2d 1041 (4th Cir. 1980); *United States v. Gould,* 419 F.2d 825 (9th Cir.1969). *United States v. Mercer,* 18 M.J. 644 (1984), illustrates the reasoning. The Court in *Mercer* distinguished two situations: The first, when the defendant uses a government agent to transport an illegal substance in which the defendant has a proprietary interest and second, when the defendant merely assists a government agent in transporting an illegal substance in which the defendant has no proprietary interest. In the first situation, the defendant is guilty as

an aider and abetter; in the second, he is not.

In the instant case, Delgado had a proprietary interest in the cocaine as evidenced by his retaking possession at the DEA controlled delivery. We find the evidence was sufficient to convict Delgado under 18 U.S.C. § 2 and 21 U.S.C. § 952(a). We affirm.

### ii. Hernandez

Hernandez argues the evidence cannot support his convictions under 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2. We disagree.

■ To convict Hernandez of conspiracy to possess with intent to distribute, under 21 U.S.C. § 846, the government had to prove beyond a reasonable doubt that (1) an agreement existed between two or more persons to commit a crime and (2) the defendant knowingly and voluntarily joined or participated in the conspiracy. *United States v. Andrews,* 953 F.2d 1312, 1318 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 3007, 120 L.Ed.2d 882 (1992); *United States v. Vera,* 701 F.2d 1349 (11th Cir.1983). To prove an agreement existed the government may use

> circumstantial evidence, such as inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme. Proof is not required that the defendant had knowledge of all the details of the conspiracy; the defendant need only have knowledge of the essential objective of the conspiracy. The defendant may be found guilty of conspiracy even if he did not join the conspiracy until after its inception, and even if he plays only a minor role in the total scheme.

*United States v. Tamargo,* 672 F.2d 887, 889 (11th Cir.) (internal citations omitted), *cert. denied,* 459 U.S. 864, 103 S.Ct. 141, 74 L.Ed.2d 119 (1982); *see also United States v. Gianni,* 678 F.2d 956, 959 (11th Cir.) (specifying that a defendant's assent may be inferred from acts furthering the conspiracy's purpose), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982).

After careful review, we hold the evidence supports Hernandez's convictions. Two witnesses, Goyanes and Costa, testified to Her-

nandez's involvement in the conspiracy. According to Goyanes, Hernandez attended at least five meetings to plan and prepare the importation (R. 9:581–82); Hernandez was present on Riverol's farm when the conspirators contacted Colombia by radio (R. 9:586); Hernandez gave Goyanes $1000 upfront for pilot expenses (R. 9:582); Hernandez performed surveillance and security at the DEA controlled delivery (R. 9:610); and Hernandez attended and participated in a meeting to recover the cocaine once the conspirators realized it was missing (because the DEA had intercepted the van) (R. 6:616–21). According to Costa, at this meeting Hernandez threatened that if the cocaine was not found someone could get killed. (R. 12:1299–1303).

Hernandez argues Goyanes and Costa lack credibility because they are government cooperating witnesses, or "flippers." Nonetheless, the jury decides whether a witness is credible; we "will not overturn a jury's decision to believe a witness." *Andrews,* 953 F.2d at 1318.

■ The same evidence supports a conviction, directly or under an aiding and abetting theory, 18 U.S.C. § 2, for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). A showing that the defendant "associated himself with a criminal venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed" will support a conviction for aiding and abetting. *United States v. Bryant,* 671 F.2d 450, 454 (11th Cir.1982). Hernandez's actions calculated to ensure success of the substantive crime, even though they took place after the thwarted delivery, support a conviction for aiding and abetting. *United States v. Perez,* 922 F.2d 782, 786 (11th Cir.), *cert. denied,* 501 U.S. 1223, 111 S.Ct. 2840, 115 L.Ed.2d 1009 (1991). A reasonable jury could have found that Hernandez associated himself with the conspiracy, and "that by conducting surveillance and actively seeking the lost cocaine, [he] intended to bring about the successful completion" of the crime. *Id.*

Viewing the evidence in the light most favorable to the government, including all reasonable inferences and credibility judgments, *see Glasser v. United States,* 315 U.S.

60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we conclude a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Kelly,* 888 F.2d 732, 740 (11th Cir.1989). We affirm Hernandez's convictions as to each count.

### D. Prosecutorial Misconduct

#### i. Improper Vouching

■■■ Riverol and Delgado argue the trial judge erred in permitting the government to introduce portions of plea agreements between the government and its cooperating witnesses. The portions challenged contained promises to testify truthfully. Because these agreements were introduced on direct examination, before any cross-examination attack on the witness's credibility, the defense argues the government improperly attempted to bolster or vouch for the credibility of its witnesses. The defense relies on *United States v. Hilton,* 772 F.2d 783, 787 (11th Cir.1985), for this rule of law. This Court, however, modified *Hilton* the following year in *United States v. Cruz,* 805 F.2d 1464 (11th Cir.1986). Under *Cruz,* if defense counsel attacks a witness's credibility during opening the prosecutor may rehabilitate the witness on direct examination. Specifically, a prosecutor may "elicit testimony regarding the truth-telling portion of a cooperation agreement during direct examination." *Id.* at 1480.

In the instant case, the record discloses abundant vitriolic remarks during defense counsels's openings on the character and credibility of government witnesses, the least of which included calling them liars, perjurers, and paid prevaricators. (*See* R. 6:278–305). Accordingly, we conclude the trial judge did not err when he permitted the prosecutor to delve into the plea agreements on direct examination.

#### ii. Improper Comment in Closing Argument

##### a. Defendants's Failure to Explain Presence at a Shopping Center

Delgado and Hernandez request a new trial based on the following prosecutorial comment in closing argument:

And what is the legitimate reason? I mean, did you hear a legitimate reason for any of those four individuals to be at the Palmetto Park Square shopping center?

(R. 13:1736). Defense counsel immediately objected, were sustained, and the Court gave the following curative instruction:

Counsel are quite correct, there is no burden on the defendants to produce any evidence at all or to produce any. They don't have to testify, they don't have to produce any evidence. You must not infer in any way that they do.

(R. 13:1736). Immediately after the judge's curative instruction the prosecutor continued his closing argument with the following:

That is absolutely true. The government has the burden in this case. The government has the burden of proof in this case to prove to you what the defendants were doing at the Boca Raton shopping center. What they were doing was aiding and abetting the delivery of 600 kilograms of cocaine.

And when I talk to you about what they—legitimate reasons, I am talking about through the arguments of counsel, what counsel has stated in terms of what they're doing there.

(R. 13:1737).

Appellants argue the remarks were an improper comment on the assertion of their Fifth Amendment right not to testify, and an improper burden shifting suggestion to the jury that the defendants bore a burden to produce exculpatory evidence. As to each contention, we disagree. Prosecutorial misconduct requires a new trial only if we find the remarks (1) were improper and (2) prejudiced the defendants's substantive rights. *United States v. Cole,* 755 F.2d 748, 767 (11th Cir.1985). To judge whether each prong is met we look to *United States v. Norton,* 867 F.2d 1354 (11th Cir.1989), in which this Court found that a prosecutor's indirect reference to a defendant's failure to testify is not reversible error per se. *Id.* at 1364.

■■■ When such a reference occurs, the district judge must determine whether the statement was (1) manifestly intended or (2) of such a character that a jury would

naturally and necessarily take it to be a comment on the accused's failure to testify. *United States v. Herring,* 955 F.2d 703, 709 (11th Cir.1992). The district judge is better able to determine this because she has the opportunity to observe the prosecutor's demeanor first hand. *Id.* We review the district judge's determination of prosecutorial intent or jury effect for abuse of discretion. *Id.*

■ In the instant case the district judge sustained the objection, gave a curative instruction, and denied the defense motions for a mistrial. The judge's actions unerringly accord with *Norton,* another case in which the "prosecutor did not directly refer to the *defendant's* decision not to testify, but to *defense counsel's* failure to rebut the government's evidence." *Norton,* 867 F.2d at 1364. *Norton* stressed the settled Eleventh Circuit law that "a defendant's fifth amendment privilege is not infringed by a comment on the failure of the defense, *as opposed to the defendant,* to counter or explain the testimony presented or evidence introduced." *Id.* (emphasis added). Such a statement is not one that the jury would "naturally and necessarily" construe to be a comment on the defendants's silence; it is closer to a permissible comment on the logical inferences from all the evidence than to an argument requiring negative inference from the defendant's failure to testify. *See id.* The statement, therefore, is neither improper nor prejudicial.

Even if the prosecutor's remarks were prejudicial, the district judge gave a curative instruction which, under settled Eleventh Circuit law, would render any error harmless where the evidence of guilt was overwhelming. *United States v. Herring,* 955 F.2d 703, 710 (11th Cir.1992); *United States v. Lopez,* 898 F.2d 1505, 1511 (11th Cir.1990); *United States v. Rodriguez,* 765 F.2d 1546, 1560 (11th Cir.1985); *United States v. Trujillo,* 714 F.2d 102, 104–05 (11th Cir.1983); *United States v. Dorr,* 636 F.2d 117, 121 (5th Cir. Unit A. 1981). The jury convicted Delgado and Hernandez on all counts while acquitting Riverol on three of the four counts charged against him. The prosecutorial statement attacked by Delgado and Hernandez applied

to Riverol as well. Their convictions, in the face of a three-count acquittal of Riverol, provide strong support that these remarks were harmless, if error.

Accordingly, when reviewed in context, assessing the probable jury impact, *see Cannon,* 41 F.3d 1462, 1469 (11th Cir.1995), we find no prejudice to either defendant's substantive rights. *See id.* The district court properly denied the defendants's motions for a mistrial.

■ The same analysis applies to the burden shifting argument. Even if improper, "the prejudice from the comments of a prosecutor which may result in a shifting of the burden of proof can be cured by a court's instruction regarding the burden of proof." *United States v. Simon,* 964 F.2d 1082, 1087 (11th Cir.1992). The district judge immediately and explicitly instructed the jury that the defense bore absolutely no burden to produce evidence. In light of this curative instruction, we again find the district court properly denied the defendants's motion for a mistrial.

#### b. "War on Drugs"

■ Riverol and Delgado request a new trial based on the following comment by the prosecutor in closing argument:

> [W]hether you're offended or not by paying Dave Cavanaugh $218,000 over two years for what he did, you shouldn't hold that against Dave Cavanaugh. That doesn't do anything to Dave Cavanaugh's credibility. The United States of America, your government, the DEA, paid Dave Cavanaugh those amounts. They paid Dave Cavanaugh those amounts in their "War on Drugs." If you have a problem with Dave Cavanaugh receiving that kind of money, your problem is with the government, it is not with Dave Cavanaugh and it shouldn't reflect on the credibility of Dave Cavanaugh as he testified in this courtroom.

(R. 13:1549).

Defense counsel objected immediately to the prosecutor's reference to the War on Drugs. The district judge overruled the objection and instructed the jury that they

were to try only the issues in the case, not the War on Drugs. *Id.*

The defendants's argument lacks merit. This Court has held that "[r]eference during closing argument to the drug problems of society and defendants' roles in such problems are not unduly prejudicial or excessively inflammatory." *United States v. Zielie,* 734 F.2d 1447, 1461 (11th Cir.1984); *United States v. Metz,* 608 F.2d 147, 158 (5th Cir. 1979).

Finding no merit to any of the defendants's prosecutorial misconduct allegations, we deny their requests for a new trial.

### E. Jury Request for Testimony Transcripts to be Read Back

■ Hernandez argues the district court abused its discretion in denying the jury's request to read back portions of the transcripts—which would have shown Hernandez was absent from a meeting where the final cocaine pick-up was planned—and in instructing the jury to rely upon its own collective recollection. We disagree.

During deliberations, the jury posed the following question:

> Your Honor: We would like to know if we have access to the transcripts to verify certain testimony; if not, can we verify who was identified by the witnesses as being present at the evening of May 19th, 1989, at [a certain restaurant]?

(R. 14:1784). If read back, the testimony would have shown Hernandez and the fifth defendant were not at the meeting, Albelo and Riverol were at the meeting, and Delgado came to the restaurant parking lot but never entered the restaurant.

The district court invited counsel to suggest a response to the jury's query. *Id.* Initially, counsel for the government, Albelo, and Riverol suggested instructing the jury to rely on their own collective memories. Counsel for Hernandez, Delgado, and the fifth defendant wanted the testimony read back. (R. 12:1784–85). Because the lawyers could not agree on whether the testimony

should be read back, the judge urged them to stipulate to a list of who was present at the meeting in question. Eventually, the government, Hernandez, and the fifth defendant were willing to stipulate; Delgado, Albelo, and Riverol refused. (R. 12:1794–1800). In addition, Delgado, Albelo, and Riverol opposed any stipulation as to who was absent from the meeting because it would necessarily imply the remaining defendants were present. *Id.* Finally, after much discussion between the lawyers and the court, the judge instructed the jury to rely on its collective memory. *Id.*

■ The district judge has broad discretion when responding to a jury request that evidence be reread. *United States v. Alfonso,* 552 F.2d 605, 619 (5th Cir.1977). Here, he was faced with two defendants who might benefit from the rereading or a stipulation, and three defendants who, according to their lawyers's own arguments, probably would be harmed by any rereading or stipulation. The judge did his best to reconcile their positions and craft a compromise to no avail. "This is one of those cases where the trial court, having given the matter proper consideration, could have been right on either course of action." *United States v. Quesada–Rosadal,* 685 F.2d 1281, 1283 (11th Cir.1982) (finding no abuse of discretion in refusing to read back testimony and instead instructing the jury to rely on their own recollection). Accordingly, we find the district court did not abuse its discretion in this matter.

### F. Sentencing

The government concedes this Court must remand for the district court to resentence Hernandez and Albelo: Hernandez lacked notice his sentence would be adjusted for obstruction of justice; Albelo lacked notice his sentence might be adjusted for a firearm enhancement.[4] The government contests all other sentencing issues raised by appellants.

Upon review of the sentencing court's fact findings, we find no clear error.

---

4. As explained below, Albelo argues the district court erred in not stating reasons for the sentence imposed; accordingly, we do not know if

the judge actually relied on the firearms enhancement. This issue is dealt with in full at III.F.iii.

### i. Delgado

Delgado challenges as error the sentencing court's use of contested factual allegations regarding Delgado's role in the conspiracy. Delgado argues the evidence presented at trial did not support a finding that Delgado was either a leader or an organizer. We disagree.

 A sentencing court may rely on disputed facts in a sentencing report when they are shown by some reliable proof allowing the court to conclude it is not unlikely the statements are true. *United States v. Restrepo,* 832 F.2d 146, 148 (11th Cir.1987). Specifically, the court may consider conduct proved by the greater weight of the evidence. *United States v. Alston,* 895 F.2d 1362, 1373 (11th Cir.1990). In imposing the upward adjustment the court cited two factors: Delgado received the lion's share of the cocaine and, when the conspirators had the opportunity to retake the cocaine, no decision could be made until Delgado arrived. Each factor is properly considered under the United States Sentencing Commission Guidelines, § 3B1.1 Application Note 4.[5]

After careful review of the record we find the evidence amply supports these fact findings by the greater weight of the evidence. Accordingly, we find the sentencing court did not err in imposing the upward adjustment challenged by Delgado.

In addition, Delgado argues that including suppressed evidence in the presentence investigation ("PSI") report violated his constitutional rights. At trial, the district judge suppressed statements obtained in violation of both the Fifth and Sixth Amendments when Delgado was custodially interrogated after refusing to answer further questions without a lawyer.

The prosecution, citing *United States v. Lynch,* 934 F.2d 1226 (11th Cir.), *cert. denied,* 502 U.S. 1037, 112 S.Ct. 885, 116 L.Ed.2d 788 (1991), argues the sentencing judge may consider any reliable evidence, and that illegally seized evidence is reliable.

Appellee's Br. at 60–61. While *Lynch* does so hold, it applies specifically to the exclusionary rule for Fourth Amendment violations. Indeed, *Lynch* points out that coerced confessions and convictions obtained without affording the defendant the benefit of counsel have questionable reliability that historically has kept sentencing judges from considering such evidence. *Id.* at 1235. We find the government's argument unpersuasive.

Delgado cites *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), for the rule of law that suppressed evidence cannot be used at sentencing. We easily distinguish *Estelle,* however, and find it inapposite to Delgado's argument. *Estelle* involved a capital defendant who submitted to a psychiatric evaluation without a lawyer and without any knowing or voluntary waiver of his right to have a lawyer present, or to not incriminate himself. The prosecution called the examining psychiatrist at sentencing to testify that in his opinion Estelle was a future threat to society. This testimony was crucial because in Texas the sentencer must affirm that it considers the defendant a future threat to society before it may impose a death sentence. The *Estelle* Court found that use of the testimony violated Estelle's Fifth and Sixth Amendment rights. As *Estelle's* progeny shows, however, this holding applies specifically to capital sentencings. *See Satterwhite v. Texas,* 486 U.S. 249, 257–58, 108 S.Ct. 1792, 1797–98, 100 L.Ed.2d 284 (1988). The reason for the distinction is clear: Most death penalty schemes use the jury as sentencer. *See* Deborah J. Gander, *Innocence of Death: A Habeas Petitioner's Last Chance,* 48 U. Miami L.Rev. 229, 230–231 nn. 2 & 8 (1993). When the trial judge acts as sentencer, the threat of improper prejudice, taint, or consideration is less grave. Accordingly, we refuse to extend *Estelle's* reasoning to the case at hand.

 While we agree with *Lynch* that evidence obtained in violation of the Fifth and Sixth Amendments is inherently suspect, the transcripts show the judge did not rely on

---

5. U.S.S.G. § 3B1.1 Application Note 4 allows a sentencing court to consider "the claimed right to a larger share of the fruits of the crime" and "the degree of control and authority exercised over others" in distinguishing leadership and organizational roles from those of mere management or supervision.

the suppressed evidence at sentencing. (1st S.R. 3:6). He specified two reasons for the upward departure, neither of which involved the suppressed evidence. We find no reversible error in the presence of suppressed evidence in the PSI report where, as here, the sentencing judge did not consider that evidence. *See also United States v. Jones,* 899 F.2d 1097, 1103 (11th Cir.) (explaining that where a sentencing court relies only on properly considered evidence, clear error is the standard of review), *cert. denied,* 498 U.S. 906, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990), *overruled on other grounds by United States v. Morrill,* 984 F.2d 1136 (11th Cir.1993). We do not reach the legal issue presented had the sentencing judge relied on suppressed evidence.

### ii. Hernandez

■ Hernandez challenges the sentencing court's guidelines enhancement for firearm use during drug trafficking. ·He argues the three-prong test set out in *United States v. Otero,* 890 F.2d 366 (11th Cir.1989) (per curiam), was not met. *Otero* identified three conditions that support a sentence enhancement for a coconspirator's firearm possession: (1) the possessor was charged as a coconspirator; (2) the coconspirator possessed a firearm in furtherance of the conspiracy; and (3) the defendant receiving the enhanced sentence was a member of the conspiracy at the time of the firearms possession. *Id.* at 367; *see also United States v. Nino,* 967 F.2d 1508, 1514 (11th Cir.1992) (clarifying that "nowhere in the *Otero* opinion is it said that enhancement is allowable only if the three conditions set out in the opinion are met"), *cert. denied,* —— U.S. ——, 113 S.Ct. 1432, 122 L.Ed.2d 799 (1993).

■ In the instant case, evidence established Delgado had a gun in his waistband at the final meeting of conspirators and agents found Hernandez's gun in Delgado's glove compartment. Delgado possessed the gun in furtherance of the conspiracy; Delgado and Hernandez were coconspirators; Hernandez's argument lacks merit. We find the firearms enhancement supported by the considerations set out in *Otero.* Further, Hernandez's contention that *Otero's* second

prong is unmet because neither Delgado nor Hernandez was charged with using and carrying a firearm in relation to a drug trafficking offense also lacks merit. As *Nino* makes clear, a coconspirator need not be found guilty of a firearms charge; rather, a sentencing court need only make a factual finding for sentencing purposes that a coconspirator possessed a firearm in furtherance of the conspiracy while the defendant was a member of that conspiracy. *Nino,* 967 F.2d at 1514–15. We find no error in the sentencing court's firearms enhancement against Hernandez.

### iii. Albelo

Albelo argues the sentencing court erred in failing to explicitly state the reasons for enhancement under the Guidelines pursuant to 18 U.S.C. § 3553(c)(2). The government argues this Court need not consider this issue because it has conceded Albelo's case must be remanded for lack of notice of the firearms enhancement. We agree and instruct the district court on remand to state the specific reason for any Guidelines departure. 18 U.S.C. § 3553(c)(2).

Albelo further contends the sentencing court erred in enhancing his sentence three levels for his role as a manager or supervisor under U.S.S.G. § 3B1.1(b). We disagree. The trial record and sentencing transcripts reveal a surfeit of evidence supporting the sentencing court's finding that Albelo managed or supervised. We find no clear error in the upward adjustment.

### IV. CONCLUSION

We hold that the district court (1) did not abuse its discretion in ruling on evidence; (2) did not clearly err in its fact findings, although the sentence enhancements against Hernandez and Albelo were improper because of lack of notice; (3) properly applied the law; and (4) properly denied the defense motions for a mistrial. We VACATE the sentences of Hernandez and Albelo and REMAND for the district court to resentence in light of this opinion. The judgment of the district court as to all other issues is Affirmed.

AFFIRMED in part; VACATED in part and REMANDED.