[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 25, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-14379
Non-Argument Calendar

_____

D. C. Docket No. 03-21013-CR-PCH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GREGORY L. JAMES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 25, 2005)**

Before BIRCH, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Gregory L. James, a federal prisoner convicted of drug- and firearm-related

offenses, appeals his convictions and sentence. Because the district court did not

commit reversible error in its admission of evidence or its sentencing of James, we **AFFIRM**.

## I. BACKGROUND

In December 2003, a federal grand jury indicted James, along with codefendant Kenneth Head, for conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846, carrying a firearm during the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). James pled not guilty on all charges. Following the entry of his plea, in preparation for trial, the government notified James of its intent to introduce evidence pursuant to Fed. R. Evid. 404(b), namely, James's 1988 conviction for trafficking cocaine and carrying a concealed firearm. The government also filed notice pursuant to 21 U.S.C. § 851(a)(1) that it would seek an enhanced statutory punishment for James based on his 1988 conviction and a 1995 conviction for cocaine possession.

At trial, the government presented evidence that indicated James was part of a conspiracy to import cocaine from Colombia. According to the evidence presented, codefendant Head had met Osvaldo Ortega, who had connections with Colombian drug suppliers, while the two were in prison. After their release, Head,

2

who had previously worked for James in the drug trafficking business, introduced Ortega to James. Following their introduction, Ortega began to supply James with cocaine on an intermittent basis.

In August 2003, Ortega telephoned James to notify him that he had a 200-kilogram shipment of cocaine available for purchase. After meeting with Ortega at a restaurant in Miami and ascertaining the quality of the cocaine, James agreed to buy the supply. Accordingly, over the course of several days, Ortega funneled nearly thirty-five kilograms of cocaine to either James or Head. On 5 September 2003, however, Ortega was stopped by Florida law enforcement officers, who discovered that he was in possession of twenty-five kilograms of cocaine. A search of Ortega's house revealed an additional 122 kilograms of cocaine.

Following his arrest, Ortega was questioned about the identity of the people he supplied. He acknowledged that James was one of his buyers and agreed to cooperate with law enforcement officials to facilitate James's arrest. During his interrogation, Ortega received several telephone calls, including two from James and two from Head. Subsequently, Ortega arranged for a controlled drug transaction with James. After the sale was made, Florida law enforcement officials stopped James after he committed a traffic violation. As he approached James's vehicle, the arresting police officer smelled marijuana and saw what appeared to be

a bag of marijuana sticking out of a sun-visor on the driver's side of the vehicle. The police asked James to step out of the vehicle, and a subsequent search of James's car revealed a backpack containing $129,020 sitting on the car's floorboard, a loaded semi-automatic pistol in the map pocket behind the front passenger's seat, several rounds of ammunition, and marijuana.

At the start of the trial, James's counsel reserved his opening statement, and therefore did not present any theory of defense prior to the start of the government's case. During the cross-examination of some of the government's witnesses, however, James's counsel questioned whether the witnesses ever saw James with cocaine, the money, or the gun. In addition, prior to trial, James had submitted an affidavit from Steve Martin, who claimed that he owned the discovered pistol and had accidently left it in James's car. Cross-examination of Martin at trial revealed, however, that he purchased the gun at James's direction and was told by James to lie about the gun. Citing James's cross-examination questions and Martin's affidavit, the government contended that James had put into question his knowledge and intent to commit the crimes alleged. Accordingly, to rebut this purported defense theory, the government sought to introduce pursuant to Fed. R. Evid. 404(b) evidence of James's 1988 conviction for cocaine trafficking and carrying a concealed weapon. Over James's objection, the district

4

court allowed into evidence a certified copy of the conviction. After allowing the conviction into evidence, however, the district court gave a limiting instruction that the evidence could be considered only to determine whether James had the requisite knowledge or intent to commit the crimes alleged or whether the acts were committed by accident or mistake. In addition, the government attempted to introduce pursuant to Rule 404(b) testimony from a drug user who formerly purchased drugs from James to show James's intent and knowledge of the drug trade. The district court ruled this testimony was inadmissible because its potential prejudicial effect outweighed its probative value.

A jury found James guilty of all three counts in the indictment. At the first of three sentencing hearings, the district court noted that, according to his presentence investigation report ("PSI"), James's conduct and criminal history qualified him for a sentence of life imprisonment. Because James consequently wanted to challenge the district court's criminal history findings on his 1995 conviction, the district court continued the sentencing until James could obtain a copy of the sentencing transcript from the 1995 conviction. At the second sentencing hearing, in addition to arguing that the 1995 conviction was a misdemeanor charge and not a felony, James asserted that all the enhancements proposed in his sentence violated the Sixth Amendment pursuant to the Supreme

5

Court's decision in <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S. Ct. 2531 (2004). The court ruled that the 1995 conviction was a felony conviction, and therefore James had the two prior felony convictions to qualify for the enhanced statutory penalty. The court reserved, however, its decision on his <u>Blakely</u> violation claim. Finally, at a third sentencing hearing, the district court overruled James's <u>Blakely</u> objection and sentenced James to life imprisonment. In making its determination, the district court commented: "I will impose a sentence . . . with regard to the guidelines. The guidelines require a life sentence." R7 at 10.[1]

On appeal, James argues that he was improperly convicted because the district court erred when it admitted, pursuant to Fed. R. Evid. 404(b), evidence of James's 1988 conviction for trafficking in cocaine and carrying a concealed firearm. James also argues that, in light of <u>United States v. Booker</u>, 543 U.S. ___, 125 S. Ct. 738 (2005), the district court erred by sentencing him to life imprisonment. We address each argument in turn.

## II. DISCUSSION

A. <u>Rule 404(b) Evidence</u>

We review a district court's decision to admit evidence under Fed. R. Evid.

---

[1] Contrary to these comments, however, at the first sentencing hearing, the district court noted that a life sentence for James was mandated by statute under 21 U.S.C. §§ 841(b)(1)(A) and 851(d) and therefore was not controlled by the Sentencing Guidelines. <u>See</u> R5 at 2.

404(b) for an abuse of discretion. United States v. Miller, 959 F.2d 1535, 1538 (11th Cir. 1992) (en banc). "An evidentiary ruling will stand unless the complaining party has shown a 'substantial prejudicial effect.'" United States v. Breitweiser, 357 F.3d 1249, 1254 (11th Cir.) (citations and quotations omitted), cert. denied, 541 U.S. 1091, 124 S. Ct. 2829 (2004).

> Rule 404(b) provides, in relevant part, that:
>
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

FED. R. EVID. 404(b).  We have developed a three-part test to determine whether evidence is admissible under Rule 404(b): (1) "the evidence must be relevant to an issue other than the defendant's character"; (2) "as part of the relevance analysis, there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act"; and (3) "the evidence must possess probative value that is not substantially outweighed by its undue prejudice." Breitweiser, 357 F.3d at 1254; see also Miller, 959 F.2d at 1538.

1.  Relevance to an Issue Other Than Character

According to Rule 404(b), evidence that is relevant to a defendant's intent, knowledge, and absence of mistake constitutes evidence that proves an issue other

7

than character. FED. R. EVID. 404(b). Such evidence is admissible when intent, knowledge, and absence of mistake are at issue in the case. See United States v. Delgado, 56 F.3d 1357, 1365 (11th Cir. 1995). Because "[a] defendant who enters a not guilty plea makes intent a material issue, . . . the government may meet this burden with qualifying 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue." Id.; accord United States v. Jernigan, 341 F.3d 1273, 1281 n.7 (11th Cir. 2003). Intent is also put at issue where the defendant advances a "mere presence" defense because it forces "the government to prove his criminal intent so as to negate any innocent explanation for his presence." Delgado, 56 F.3d at 1365; see also United States v. Diaz-Lizaraza, 981 F.2d 1216, 1225 (11th Cir. 1993) (finding intent at issue because of the defendant's "non-participation" defense).

In this case, we hold that James put intent, knowledge, and absence of mistake at issue in the case. By entering a plea of not guilty to the drug trafficking and firearm possession charges, James forced the government to prove the elements of the charged offenses, which included that he had the requisite intent. See Delgado, 56 F.3d at 1365 (finding not guilty plea to drug trafficking conspiracy charge put intent at issue). Moreover, by entering Martin's affidavit and advancing a defense theory based on mistake or mere participation, James put

8

his intent and knowledge at issue. To prove the intent element and negate James's purported defense, the government presented evidence of a prior conviction for drug trafficking and firearm possession, which we find was relevant in light of the similarity between the extrinsic act and the charged offenses. See United States v. Zapata, 139 F.3d 1355, 1358 (11th Cir. 1998) (per curiam) (finding evidence of prior convictions was relevant to intent because "the[] convictions involved the same state of mind at issue in the charged offenses"). Accordingly, we find that the first prong of the three-part test was met because James put intent, knowledge, and absence of mistake at issue, and the evidence from his 1988 conviction was relevant to prove these issues.[2]

2. Proof That Defendant Committed the Extrinsic Act

We have held that the second prong of the three-part test is satisfied when the extrinsic evidence introduced against a defendant was a document showing his conviction. Zapata, 139 F.3d at 1358; see also United States v. Calderon, 127 F.3d

_____

[2] James, in a memorandum citing United States v. Matthews, 411 F.3d 1210 (11th Cir. 2005) as supplemental authority, argues that Matthews compels a different result. In Matthews, we concluded that Rule 404(b) evidence is not "automatically" admissible whenever the defendant pleads not guilty. See id. at 1226. Rather, such evidence is admissible when *necessary* to prove intent. See id. at 1228 (concluding that a 1991 conviction was improperly admitted under Rule 404(b) because the government's evidence negated any inference that the defendant lacked intent, therefore rendering evidence of the prior conviction unnecessary except to prove an improper character propensity). Unlike in Matthews, however, James's defense theory, buttressed by Martin's affidavit, demonstrated that James could have committed the charged offenses without the requisite intent. Because the evidence of his prior conviction was thus necessary to prove intent, Matthews is not controlling.

1314, 1332 (11th Cir. 1997) ("It is elementary that a conviction is sufficient proof that [a defendant] committed the prior act."). Because in this case the government's 404(b) evidence was a certified copy of the final judgment and conviction order for James's 1988 conviction, there was sufficient proof that James committed the extrinsic act, and therefore the second prong of the three-part test was satisfied.

3. Probative Value Weighed Against Prejudice of the Extrinsic Act

Determining whether the probative value of Rule 404(b) evidence is substantially outweighed by its prejudicial impact "lies within the sound discretion of the district judge and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." Jernigan, 341 F.3d at 1281-82 (quotations omitted). In making this determination on the third prong of our Rule 404(b) test, we have noted that "evidence of prior drug dealings . . . is highly probative of intent in later charges of conspiracy and distribution of a controlled substance." Diaz-Lizaraza, 981 F.2d at 1224. Similarly, we have stated that "the fact that [a defendant] knowingly possessed a firearm in a car on a previous occasion makes it more likely that he knowingly did so this time as well, and not because of accident or mistake."

10

<u>Jernigan</u>, 341 F.3d at 1282.  In addition to these considerations, it is relevant whether any potential prejudicial effect from the evidence was mitigated by the judge's limiting instructions to the jury.  See <u>Diaz-Lizaraza</u>, 981 F.2d at 1225.

Based on this precedent, the probative value of the evidence of James's prior conviction was not substantially outweighed by its undue prejudice.  First, the prosecutorial need for this evidence was high in light of James's purported defense theory and the entry of Martin's affidavit.  See <u>Delgado</u>, 56 F.3d at 1365 (noting that the government has a "substantial burden" to prove intent where a defendant pleads not guilty and offers a "mere presence" defense).  Second, the charged offenses and the extrinsic act were almost identical, as both involved trafficking in cocaine and the possession of a firearm.  Third, while the prior conviction was from 1988, it was not on the facts of this case so temporally remote that its prejudice substantially outweighed its probative value.  See <u>United States v. Rubio-Gonzalez</u>, 674 F.2d 1067, 1074-75 (5th Cir. 1982).  Moreover, any prejudicial effect by the admission of the conviction was mitigated by the district court's limiting instructions to the jury both at the time the evidence was admitted and in the final charge to the jury.  See <u>Diaz-Lizaraza</u>, 981 F.2d at 1225.  Accordingly, we conclude that the 1988 conviction satisfied the third prong of our Rule 404(b) test because its probative value was not substantially outweighed by

11

its likelihood for undue prejudice.

Thus, in sum, James's 1988 conviction for drug trafficking and firearm possession met all three prongs for admission under Rule 404(b). Accordingly, the district court did not abuse its discretion in admitting into evidence the prior conviction.

B. *Blakely/Booker* Error

We review a preserved Blakely/Booker objection de novo, but will reverse only for a harmful error. United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005) (per curiam). The particular harmless error standard we apply, however, depends upon whether the district court allegedly committed constitutional Booker error because it enhanced a defendant's sentence based on facts not found by a jury or whether it committed statutory Booker error because it applied the Sentencing Guidelines as mandatory rather than advisory. See United States v. Mathenia, 409 F.3d 1289, 1291 (11th Cir. 2005) (per curiam). Because we have previously determined that a district court's use of a prior conviction does not constitute constitutional Booker error, see United States v. Shelton, 400 F.3d 1325, 1329 (11th Cir. 2005), we focus our on inquiry on the harmless error standard applied to statutory Booker objections. According to this standard, a statutory error is "harmless if, viewing the proceedings in their entirety, a court determines that the

12

error did not affect the sentence, or had but very slight effect." Mathenia, 409 F.3d at 1292 (citations and quotations omitted). The government bears the burden to show that any error was harmless. Id.

In the instant case, while the district court committed statutory Booker error at sentencing because it stated that it considered the Sentencing Guidelines to be mandatory, we find that error was harmless. Under 21 U.S.C. § 846, a defendant convicted of conspiracy to commit a drug trafficking offense "shall be subject to the same penalties as those prescribed" in 21 U.S.C. § 841. Under § 841, a defendant convicted of a drug trafficking violation after two or more prior convictions for a felony drug offense "shall be sentenced to a mandatory term of life imprisonment." 21 U.S.C. § 841(b)(1). Because he had two prior felony convictions, the district court sentenced James to life imprisonment for his conviction for conspiracy to possess with intent to distribute cocaine. Accordingly, although the district court stated that the Sentencing Guidelines mandated a life sentence, this error did not affect James's sentence because a life sentence was also mandated by statute. Thus, the district court's statutory Booker error was harmless. See United States v. Raad, 406 F.3d 1322, 1323 n.1 (11th Cir. 2005) (per curiam) (finding harmless Booker error where district court sentenced defendant in accordance with mandatory minimum sentence statute); accord

13

United States v. Wyatt, 128 Fed. Appx. 97, 98 (11th Cir. 2005) (per curiam).

## III. CONCLUSION

Based on the foregoing, and upon review of the parties' briefs and the record, we conclude that the district court did not err in admitting pursuant to Fed. R. Evid. 404(b) evidence of James's 1988 conviction to show intent, knowledge, and absence of mistake. In addition, we conclude that the district court did not commit reversible Booker error in sentencing James to life imprisonment for his conviction for conspiracy to possess with intent to distribute cocaine, as mandated by statute. Accordingly, James's convictions and sentence are **AFFIRMED.**