[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 6, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14239
Non-Argument Calendar

_____

D. C. Docket No. 05-00032-CR-4-RH-WCS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ELLIOTT GREEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(February 6, 2007)**

Before MARCUS, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Elliott Green appeals his conviction for conspiracy to distribute and possess

with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C.

§ 846. The sole issue on appeal is whether the prosecutor's remarks, made during her opening statement, regarding Green's expected future testimony prejudicially affected Green's right to receive a fair trial. On appeal, Green argues that the prosecutor's remarks violated his rights to a fair trial, as they constituted improper comments on his rights to remain silent and not to present any evidence. After thorough review of the record and careful consideration of the briefs, we affirm.

The facts relevant to Green's argument are these. On July 5, 2005, Green and co-defendant Kariem Jones were indicted on one count of conspiracy to distribute and to possess with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. § 846. The indictment charged that between April 27, 2005, and April 28, 2005, Green and Jones conspired to distribute more than 500 grams of cocaine. Green pled not guilty and proceeded to a jury trial.

During opening statements, the prosecutor paraphrased statements that Green had made to the police at the time of his arrest. The prosecutor also said:

> But on April 27th, according to the defendant, [his marijuana supplier] called him and asked if a package could be delivered. And the defendant spoke with Kariem Jones. Kariem Jones said it was okay.

> And then on the next day, April 28th, the day in question, [the defendant's marijuana supplier] called again to see whether or not the package had been delivered. And the defendant will tell you that he went to Kariem Jones's house. He went there, he waited a while, and he'll tell you that . . .

At this point, Green's attorney lodged an objection, which was sustained. The prosecutor continued with her opening statement, saying, "Excuse me. Elliott Green, the defendant will tell you that . . ." At this point, Green's attorney objected again. At a sidebar conference, Green's attorney moved for a mistrial.

The district court pointed out to the prosecutor that she was commenting on Green's "testimony at the trial" by talking about what he "would say." The prosecutor responded, "I thought I said defendant did say. That's what I thought I said. I thought I said defendant did say." The prosecutor then requested a curative instruction, which was granted, and Green's motion for a mistrial was denied. The court charged the jury with the following curative instruction:

> Members of the jury, let me tell you what that was about. Ms. Nesmith phrased the statement she was just making differently than she intended. What her reference to was evidence that the government expects to put in concerning what Mr. Green said earlier.
>
> A statement that a defendant has made can be admitted by the government. You evaluate, as with any other evidence, whether the statement was made, and if so, what -- what weight to give it. And it, of course, is proper. It's the function of an opening statement for a lawyer to comment on what the evidence will be in the case. The difficulty is that Ms. Nesmith actually phrased it by saying, "The defendant will tell you," and of course she doesn't know whether Mr. Green will testify in the case or not.
>
> As I told you in the jury selection process, a defendant never has an obligation to put on any evidence or to testify, and if he chooses not to testify in a case, you can't draw any inference against him.

3

So Mr. Greenberg's objection was correct. The prosecutor can't say what a defendant will say in a trial because the prosecutor doesn't know whether the defendant will testify or not.

During the government's case, Officer Josh Lowery of the Tallahassee Police Department ("TPD") testified that, while working as an interdiction officer at a United Parcel Service ("UPS") facility in Tallahassee, Florida, an overnight parcel came to his attention. The return address on the package was fictitious, the addressee's name did not match any known residents of the address, and the phone number that the sender had provided was disconnected. The box subsequently was opened, and officers discovered one kilogram of cocaine inside. The cocaine was removed from the box, and the TPD made plans to conduct a controlled delivery of the package.

Officer Scott Heath, another TPD interdiction officer present at the UPS facility, set up surveillance near the target house. As Officer Heath, who was driving in an unmarked Toyota ForeRunner, passed by the target house, he saw a gold Toyota Corolla parked in the driveway of the house. The driver of the Corolla, later identified as Green, was having a conversation with co-defendant Jones. As Officer Heath continued his surveillance of the target house, he observed the Corolla "very, very conspicuous[ly]" circling the neighborhood. By Officer Heath's count, the Corolla passed the target residence 10 to 12 times,

4

sometimes pulling into the driveway or stopping in the street right in front of the target residence.

Special Agent James Harley of the Drug Enforcement Administration saw Green driving the gold Toyota Corolla past the target residence twice and ultimately pulling into the driveway shortly after the controlled delivery of the package. Green exited the vehicle and walked towards the front door of the target residence, at which time he was arrested and taken into custody by the TPD. After his arrest, Green gave both oral and written statements.[1] According to Special Agent Harley, Green admitted that after Jones called him to tell him that the package had arrived, he (Green) turned his car around and returned to the house. Green also admitted that the package contained drugs, which he suspected to be cocaine.

The jury found Green guilty. He was sentenced to a 120-month term of imprisonment. This appeal followed.

We review claims of prosecutorial misconduct de novo. United States v. Eckhardt, 466 F.3d. 938, 947 (11th Cir. 2006), petition for cert. filed, (U.S. Dec. 19, 2006) (No. 06-8535). In reviewing such claims, we assess (1) whether the challenged comments were improper, and (2) if so, whether they prejudiced the

---

[1]According to the trial transcript, the government also introduced Green's written statement to police, but the statement is not included in the record on appeal.

5

defendant's substantial rights. See United States v. Delgado, 56 F.3d 1357, 1368 (11th Cir. 1995). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different. When the record contains sufficient evidence of guilt, any error is harmless." Eckhardt, 466 F.3d at 947 (internal quotations and citations omitted). We have identified the following four factors to consider in determining whether or not prosecutorial misconduct had a reasonable probability to change the outcome of a trial:

> 1) the degree to which the challenged remarks have a tendency to mislead the jury and to prejudice the accused; 2) whether they are isolated or extensive; 3) whether they were deliberately or accidentally placed before the jury; and 4) the strength of the competent proof to establish the guilt of the accused.

Davis v. Zant, 36 F.3d 1538, 1546 (11th Cir. 1994) (citations omitted). Moreover, a curative instruction may render a prejudicial remark by the prosecutor harmless. United States v. Bailey, 123 F.3d 1381, 1400 (11th Cir. 1997) (internal quotations and citations omitted). Accordingly, alleged prosecutorial misconduct must be considered in the context of the entire trial along with any curative instruction. Id.

Here, assuming arguendo that the remarks were improper under the first prong of the Davis test, the remarks -- which numbered only two and were confined to the opening statement -- were isolated, rather than extensive, and were

6

made accidentally.  Moreover, we can find no indication that the jury was misled, particularly in light of the extensive curative instruction immediately given by the district court.  The government subsequently presented substantial, competent proof of Green's guilt.  On this record, Green has not shown that the remarks prejudiced his substantial rights for purposes of the second prong of <u>Davis</u>. Accordingly, we affirm.

**AFFIRMED.**