[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-10267

_____

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 23, 2005
THOMAS K. KAHN
CLERK**

D. C. Docket No. 03-00056-CR-FTM-29-DNF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEFFERY ALAN READON,
a.k.a. Malikar,
DEXTER LEON GRANT,
a.k.a. Leon,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(June 23, 2005)**

Before BLACK and HULL, Circuit Judges, and O'KELLEY[*], District Judge.

PER CURIAM:

_____

[*] Honorable William C. O'Kelley, United States District Judge for the Northern District
of Georgia, sitting by designation.

Jeffery Alan Readon appeals his conviction and sentence for conspiracy to possess with intent to distribute 500 grams or more of cocaine; possession with intent to distribute 5 grams or more of cocaine base; and possession with intent to distribute 500 grams or more of cocaine, all in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846. Readon's co-defendant, Dexter Leon Grant also appeals his conviction and sentence for the same conspiracy charge. Readon and Grant make various arguments on appeal, and we address each of their issues in turn. We affirm their convictions, but vacate and remand as to both for resentencing consistent with *United States v. Booker*, 125 S. Ct. 738 (2005).

## I. DISCUSSION

### A. *Readon*

#### 1. *Religious beliefs*

Readon asserts the district court erred by not permitting him to testify about the nature of his religious beliefs, which he contends were probative of his motives for being in contact with co-conspirators Leonard Morris and Alvin Stuart. We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Massey*, 89 F.3d 1433, 1441 (11th Cir. 1996). "A person's beliefs, superstitions, or affiliation with a religious group is properly admissible

where probative of an issue in a criminal prosecution." *United States v. Beasley*, 72 F.3d 1518, 1527 (11th Cir. 1996).

Although Readon contends testimony about the nature of his religion would show the jury he understood Yahweh concepts, he did not suggest such testimony would allow the jury to determine he had no illicit contacts with Morris and Stuart, or would otherwise be relevant to the charged offenses. Moreover, Readon did present his religion defense by testifying that his purpose for maintaining contact with Morris and Stuart was to give spiritual advice. Based on these facts, the district court did not abuse its discretion by not permitting Readon to testify about the nature of his religious beliefs.

2.    *Prosecutorial misconduct*

Readon contends the Government improperly commented, during closing arguments, on the credibility of witnesses at trial. "Prosecutorial misconduct requires a new trial only if . . . the remarks (1) were improper and (2) prejudiced the defendants's substantive rights." *United States v. Delgado*, 56 F.3d 1357, 1363 (11th Cir. 1995) Such comments are reviewed in context and assessed based on the probable jury impact. *Id.*

When defense counsel attacks the credibility of government witnesses, the government, in response, is "entitled to argue fairly to the jury the credibility of

3

the government and defense witnesses." *United States v. Eley*, 723 F.2d 1522, 1526 (11th Cir. 1984). "It is improper for the prosecution to place the prestige of the government behind a witness by making explicit personal assurances of the witness's veracity or by indicating that information not presented to the jury supports the testimony." *United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. 1991). This "prohibition against vouching does not forbid prosecutors from arguing credibility, which may be central to the case; rather, it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury." *Id.* When the government "voices a personal opinion but indicates this belief is based on evidence in the record, the comment does not require a new trial." *United States v. Adams*, 799 F.2d 665, 670 (11th Cir. 1986) (quotations and citation omitted).

Readon objected only to the Government's rebuttal statement that the jury should decide for itself whether Readon's or a trained investigator's version of proper investigation procedures should be trusted. Thus, whether this statement amounted to prosecutorial misconduct is subject to plenary review. *See Delgado*, 56 F.3d at 1363. Taken in the context of the entire case, the Government's statement was made in response to Readon's attack on Agent Tige Thompson's

credibility. The Government did not argue credibility on an impermissible basis.

There was no reversible error. *See Eley*, 723 F.2d at 1526.

Because Readon did not object to the Government's other allegedly

improper closing argument statements, we review for plain error. *United States v.*

*Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997).

> An appellate court may not correct an error [that] the defendant failed
> to raise in the district court unless there is: (1) error, (2) that is plain,
> and (3) that affects substantial rights. If all three conditions are met,
> an appellate court may then exercise its discretion to notice a forfeited
> error, but only if (4) the error seriously affects the fairness, integrity,
> or public reputation of the judicial proceedings.

*United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005) (internal

quotations and citation omitted). Readon argues the Government improperly

(1) vouched for its own witnesses by stating they were credible despite their

criminal convictions, and (2) attacked the credibility of defense witnesses by

implying they were liars. These arguments are without merit.

The Government did not make explicit personal assurances of Morris's and

Stuart's veracities; nor did it indicate information not presented to the jury

supported the testimony. Instead, it asked the jury to look at the testimony

objectively, and specifically noted that Morris and Stuart were convicted

criminals, and not "angels." Additionally, the Government did not assert its

witnesses were truthful and the defense witnesses were liars, but instead stated that it was the jury's job to determine credibility. Accordingly, the Government's challenged remarks did not rise to the level of plain error by seriously affecting the fairness and integrity of the trial. *See Bailey*, 123 F.3d at 1402.

As for Readon's next contention, during the statements at issue, the Government specifically stated it was not calling the defense witnesses liars, but instead was questioning whether they had "been mistaken or confused," as well as their ability to "remember the facts at hand." The Government also stated its witnesses were not "angels," but the jury should nonetheless objectively find them credible, especially given the consistency of their testimonies. Readon argues the Government was improperly attempting to invoke the prestige of the federal government by making these statements. His argument is not supported by the record.

Readon also contends the Government improperly stated the evidence lent itself to a finding that drug dealers are "paranoid individuals" in that they are always concerned about being caught. Although the statement to which Readon cites contains a personal opinion, it also indicates the opinion is based on evidence in the record. Thus, there is no plain error. *See Adams*, 799 F.2d at 670.

3. *Failure to sua sponte take additional curative measures*

Readon also claims the Government, in questioning, suggested he tried to avoid capture and thereby prejudiced his defense. Aside from his initial objection, which was sustained, Readon did not seek further curative relief from the question he now alleges suggested he tried to avoid capture. As such, his claim that prejudicial error resulted from the district court's failure to do anything beyond sustaining his initial objection is reviewed for plain error only. *United States v. Hall*, 314 F.3d 565, 566 (11th Cir. 2002). Even assuming that plain error occurred, the other evidence presented at trial sufficiently supported the jury's guilty verdict. *See id.* at 567. As such, Readon's substantial rights were unaffected by the court's failure to cure sua sponte.

4. *Blakely/Booker*

Readon failed to raise Sixth Amendment constitutional challenges to his sentence in the district court. We therefore review his *Booker* claims for plain error. *Rodriguez*, 398 F.3d at 1298. We have clarified there are two types of *Booker* error: (1) Sixth Amendment, or constitutional, error based upon sentencing enhancements, imposed under a mandatory Guidelines system, neither admitted by the defendant nor submitted to a jury and proven beyond a reasonable doubt; and (2) statutory error based upon sentencing under a mandatory

7

Guidelines system. *United States v. Shelton*, 400 F.3d 1325, 1329–30 (11th Cir. 2005). We turn directly to statutory error.

Readon meets both the first and second prongs of plain-error review for statutory error because he was sentenced under a mandatory Guidelines system. *See Shelton*, 400 F.3d at 1330–31. Under the third prong of plain-error review, "we ask whether there is a reasonable probability of a different result if the [G]uidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." *Rodriguez*, 398 F.3d at 1301. It is the defendant's burden to show he meets this test. *Id.* at 1299.

The record shows there is a reasonable probability that the district court would have imposed a different sentence had it applied the Guidelines in an advisory fashion. At Readon's sentencing, there was discussion regarding whether the district court had discretion to impose the obstruction of justice enhancement. The court found Readon committed perjury, qualifying him for the enhancement and concluded it did not have discretion to avoid imposing the enhancement. The court stated: "Congress has said pretty clearly and the Eleventh Circuit has said pretty clearly that the [G]uidelines are binding upon the court and the court can't play games with the [G]uidelines simply because it may not like the result." The district judge also stated: "I must admit I'm somewhat

troubled with the lack of criminal history." These comments are sufficient to satisfy the third prong of plain-error review. *See id.* at 1301.

Readon also meets the fourth prong of plain-error review. "[T]he plain error of applying the Guidelines in a mandatory fashion seriously affected the fairness, integrity or public reputation of [Readon's] sentencing." *See United States v. Martinez*, 407 F.3d 1170, 1174 (11th Cir. 2005). Thus, the district court plainly erred in sentencing Readon under a mandatory Guidelines scheme.

B.    *Grant*

1.    *Judgment of Acquittal*

We review the district court's denial of a motion for a judgment of acquittal de novo, viewing the facts and drawing all inferences in the light most favorable to the government. *United States v. Descent*, 292 F.3d 703, 706 (11th Cir. 2002). To affirm "the denial of a Rule 29 motion, 'we need only determine that a reasonable fact-finder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt.'" *Id.* (citation omitted). Judgment of acquittal is not required "because the government's case includes testimony by 'an array of scoundrels, liars, and brigands.'" *United States v. Hewitt*, 663 F.2d 1381, 1385 (11th Cir. 1981) (citation omitted).

"To sustain a conviction for conspiracy to possess cocaine with intent to distribute, the government must prove beyond a reasonable doubt that (1) an illegal agreement existed; (2) the defendant knew of it; and (3) the defendant, with knowledge, voluntarily joined it." *United States v. McDowell*, 250 F.3d 1354, 1365 (11th Cir. 2001). "Although presence is certainly a factor to consider in determining whether a defendant joined a conspiracy, it is well settled that mere presence will not support a conviction." *United States v. Charles*, 313 F.3d 1278, 1284 (11th Cir. 2002). "Thus, although the government is not required to prove that [the defendant] knew every detail or that he participated in every stage of the conspiracy, the government must prove that he knew the essential nature of the conspiracy." *Id.* (quotations and citations omitted).

Viewing the facts and drawing all inferences in the light most favorable to the Government, a reasonable fact-finder could conclude the evidence established beyond a reasonable doubt that Grant conspired to possess cocaine with intent to distribute. Grant introduced Morris and Stuart to Readon for the purpose of purchasing a half kilogram of cocaine, and the transaction occurred in Grant's home. Moreover, on that occasion, Morris, in Grant's presence, tested the cocaine's quality by cooking 14 grams of it into cocaine base. Also, Readon paid Grant a fee for "helping his business." On other occasions, Grant's home was

10

used as a meeting place prior to conducting a cocaine transaction; he acted as a liaison between Morris and Readon; he accepted payment on behalf of Readon for a quantity of cocaine Readon had fronted Stuart and Morris; and he was paid for his various services.

Grant's argument that the testimony provided by Morris and Stuart was not credible because they were convicted criminals testifying against him in exchange for lower prison sentences is unavailing. Credibility determinations are within the jury's province, and Morris's and Stuart's status as criminals did not require granting the Rule 29 motion. *See id.*; *Hewitt*, 663 F.2d at 1385. Moreover, since Grant chose to testify and his testimony was contrary to that of other witnesses, the jury could consider his testimony as "substantive evidence of [his] guilt." *See United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995). Accordingly, the evidence was more than sufficient for a reasonable jury to find beyond a reasonable doubt that Grant knew about and joined the illegal conspiracy.

2.      *Blakely/Booker*

Grant failed to raise Sixth Amendment constitutional challenges to his sentence in the district court. We therefore review his *Booker* claims for plain error. *Rodriguez*, 398 F.3d at 1298. Again, we turn directly to statutory error.

Grant meets both the first and second prongs of plain-error review for statutory error because he was sentenced under a mandatory Guidelines system. *See Shelton*, 400 F.3d at 1330–31. He also meets the third prong. At Grant's sentencing, in discussing whether the court had discretion in imposing the obstruction of justice enhancement, the district judge stated: "[T]he whole purpose of the [G]uidelines is that the judges don't have the authority to, on their own, decide that certain parts don't apply just because they don't like the impact on the sentence." The district judge further stated: "I found that the obstruction of justice does apply. And therefore, I don't find that I have the authority to just ignore it because I might be unhappy about its impact on the sentence . . . ." These comments, taken together, show a reasonable probability of a different result if the Guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case. *See Rodriguez*, 398 F.3d at 1301.

Grant also meets the fourth prong of plain-error review. "[T]he plain error of applying the Guidelines in a mandatory fashion seriously affected the fairness, integrity or public reputation of [Grant's] sentencing." *See Martinez*, 407 F.3d at 1174. Thus, the district court plainly erred in sentencing Grant under a mandatory Guidelines scheme.

## II. CONCLUSION

For the foregoing reasons, we hold the district court did not commit any reversible error at trial affecting Readon's and Grant's convictions. The district court did, however, plainly err in sentencing Grant and Readon under a mandatory Guidelines scheme. Thus, we affirm Readon's and Grant's convictions, but vacate their sentences and remand for resentencing in light of *Booker*.[1] We note the district court correctly calculated both Readon's and Grant's Guidelines range of 151 to 188 months' imprisonment. *See United States v. Crawford*, 407 F.3d 1174, 1178–79 (11th Cir. 2005) (stating after *Booker*, district courts must consult the Guidelines and "[t]his consultation requirement, at a minimum, obliges the district court to calculate *correctly* the sentencing range prescribed by the Guidelines"). Thus, on remand the district court is required to sentence Readon and Grant according to *Booker*, considering the Guidelines advisory range of 151 to 188

---

[1] Grant also appeals the district court's failure to grant him a minor-role reduction. His argument is without merit. *See* 11th Cir. R. 36-1.

months' imprisonment and "other statutory concerns as well, see [18 U.S.C.] § 3553(a) (Supp. 2004)." *Booker*, 125 S. Ct. at 757.[2]

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

---

[2] We do not mean to imply by our holding that on remand the district court must impose a lesser sentence. Rather, we merely hold Readon and Grant met their burdens of showing *Booker* statutory plain error. We also will not attempt to decide now whether particular sentences below the Guidelines range might be reasonable in this case.