[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 2, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10083
Non-Argument Calendar

_____

D. C. Docket No. 00-00041-CR-FTM-29DNF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM R. DOWNS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 2, 2006)**

Before TJOFLAT,  BLACK and MARCUS, Circuit Judges.

PER CURIAM:

William Downs appeals the district court's Second Amended Judgment, entered after a jury verdict finding him guilty of possession with intent to distribute fifty grams or more of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii), and conspiracy to commit the same, in violation of 21 U.S.C. § 846. On appeal, Downs argues that (1) the jury selection process resulted in a racially imbalanced jury, thereby violating his constitutional rights, and (2) the district court erred by failing to sua sponte declare a mistrial based on prosecutorial remarks during opening statement.[1] After careful review, we affirm.

We review constitutional challenges to the jury selection process de novo. United States v. Grisham, 63 F.3d 1074, 1077 (11th Cir. 1995). Normally, when

---

[1]We are unpersuaded by Downs's claim of error based on the district court's jury instruction on the law of conspiracy. During the discussion of the jury instructions, the district court stated that it planned to use the pattern jury instruction and went over the pattern instruction on conspiracy, to which neither party objected. Generally, district courts have broad discretion in formulating jury instructions provided that the charge as a whole accurately reflects the law and the facts. United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000). We will not reverse a conviction on the basis of a jury charge unless the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process. Id. In the instant case, the district court used this Circuit's pattern jury instruction on conspiracy, the use of which we approved in United States v. Trujillo, 146 F.3d 838, 846 (11th Cir. 1998). In fact, in Trujillo, we specifically rejected a claim similar to Downs's -- that the district court erred by instructing the jury that the government did not have to prove that all people named in the indictment were members of the scheme -- and held that the pattern jury instruction accurately reflected the elements of conspiracy. Moreover, the district court's was entirely consistent with the indictment, which alleged that Downs and Fields conspired with "persons known and unknown to the Grand Jury." Accordingly, there was no abuse of discretion, or plain error, on this basis.

we review a claim of prosecutorial misconduct, we assess (1) whether the challenged comments were improper and (2) if so, whether they prejudiced the defendant's substantial rights. See United States v. Delgado, 56 F.3d 1357, 1368 (11th Cir. 1995). However, where, as here, a defendant did not object to the alleged prosecutorial misconduct, we will reverse only for plain error that is so obvious that failure to correct it would jeopardize the fairness and integrity of the trial. United States v. Bailey, 123 F.3d 1381, 1400 (11th Cir. 1997) (in the context of prosecutor's closing argument).

The relevant facts are these. On June 14, 2000, Downs was indicted, along with co-defendant Sophia Laverne Fields, for possession with intent to distribute fifty grams or more of crack, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii), and conspiracy to commit the same, in violation of 21 U.S.C. § 846. Downs and Fields pled not guilty to the charges and proceeded to separate jury trials, pursuant to the district court's grant of Downs's motion to sever the trials.

At Downs's trial, the district court conducted voir dire of the jury pool. Although the transcript does not reflect the race of any of the prospective jurors, when the parties were making their peremptory challenges, Downs objected to the lack of African-Americans on the panel, although he did not point to any specific peremptory challenge exercised by the government. Defense counsel then noted

3

that Downs was an African-American and that it would be difficult "to find a jury of his peers when there [were] none" there. The district court asked counsel what he wanted it to do about this, to which counsel replied "I do [not] know what you can do . . . I just want to note my objection to the array based upon the fact that it [is] racially imbalanced." After the court noted Downs's objection, counsel then requested that the court "dispanel the jury and get one with more [African-Americans] on it." The district court denied Downs's request, noting that Downs had not made any showing of prejudice or a discriminatory selection process, despite that there were no African-Americans on the jury panel. Downs made no further objections, and at no point did he ask the court to hold a hearing regarding the jury selection process.

After the jury had been selected, the district court explained to the jury the purpose of the parties' opening statements -- to explain the issues and summarize the facts that they expected the evidence to show -- and cautioned the jury that the opening statements were "not to be considered . . . as evidence in the case or as instructions of the law." The government's opening statement included the following:

> This is a case about . . . crack cocaine. You are here today because . . . Downs was driving in a rental car from Miami . . . towards the St. Petersburg area. You are here today because in that rental car that he

4

was a passenger in there was over fifty grams or more of . . . crack cocaine.

The government then summarized the facts that would be established during the trial. At no point did Downs object during the government's opening statement.

The government then presented the following evidence during its case-in-chief. On June 6, 1999, Officer John Wilcox of the Florida Highway Patrol ("FHP") was on duty on Interstate 75 in Naples, Florida when he observed a Lincoln Town Car speeding. Officer Wilcox pulled the car over and asked Fields, who was driving, for her driver's license. Wilcox noticed that the photo on the license that Fields provided him, belonging to a "Thais Leon," did not look like Fields. He also noticed that Downs kept turning around and looking back at the police car and appeared "extremely nervous."

FHP Officer Michael Grider, accompanied by a canine, arrived soon after Wilcox to assist with the traffic stop. While Officer Wilcox was issuing a warning for the speeding violation, Officer Grider also noticed that the driver's license picture did not look like Fields. After noting that the car was a rental, Officer Grider asked to see the rental agreement. Fields provided the rental agreement, which indicated that the car was rented to Sophia Fields and did not allow any additional drivers. When asked about the differing names on the driver's license

5

and the rental agreement, Fields claimed that Sophia Fields was her cousin and had rented the car.

Officer Grider then asked Fields whether there were drugs or weapons inside the vehicle and she responded no. Wilcox obtained Fields's consent to search the vehicle. After Officer Grider instructed Downs to exit the vehicle so that the officers could search it, Downs got out of the vehicle and started to yell at Fields for consenting to the search. Both officers observed Downs waving his hands around as he yelled at Fields and asked her to withdraw the consent.

At that point, Officer Grider's canine alerted to the odor of drugs at the seams of both front doors and at the floorboard under the front passenger seat. After Grider returned his canine to his vehicle, he again approached the Town Car, at which time Downs stepped in front of him with his hands outstretched as if to stop Grider from moving past him, and asked Grider what he was doing. Downs then stated that he knew his rights and that Officer Grider was not allowed to go back inside the vehicle. Over this objection, Grider returned to the Town Car where he discovered two crack cocaine "cookies" underneath the passenger seat, which Downs had vacated before the search. Downs and Fields were arrested and placed inside of Wilcox's cruiser, which was equipped with a recording device.[2]

---

[2]The government played the tape of the conversation to the jury, but the transcript of the conversation was not included in the record on appeal. However, the presentence investigation

Shortly after the defendants' arrests, Downs spoke to Fields's brother, Byron Jones, who testified for the government. Jones said that both Fields and Downs had called him after they were arrested, and that Downs told him that Fields had nothing to do with the drugs. Jones told Downs to "fess up" about the drugs, to which Downs responded that he would do so.

Downs did not present any evidence in his defense. The jury found him guilty as charged. He subsequently was sentenced to 260 months' imprisonment on both counts, with the terms to run concurrently, followed by 5 years' supervised release. Downs appealed his convictions and was appointed new counsel for his appeal. We affirmed his convictions on direct appeal, in which he argued that the government's evidence was insufficient to show that he knew about the presence of the drugs, or that he knowingly possessed them. See United States v. Downs, No. 01-10821 (11th Cir. Sep. 6, 2001) (unpublished).

Downs then filed a motion to vacate, set aside or correct a sentence pursuant to 28 U.S.C. § 2255, alleging several grounds of ineffective assistance of both trial and appellate counsel including, in pertinent part, that his appellate counsel was ineffective for failing to obtain and review transcripts of the entire trial. The district court denied the § 2255 as to the claims based on ineffective assistance of

report ("PSI"), which was uncontested, indicated that both Fields and Downs made comments consistent with knowledge of the presence of drugs in the vehicle.

7

trial counsel, but granted it is as to the appellate representation Downs received. The district court found that appellate counsel had been ineffective for failing to have the opening statements, closing arguments and jury instructions transcribed. The district court gave Downs leave to file an out-of-time appeal, limited to issues arising from the opening statements, closing arguments and jury instructions. The district court also ordered the original criminal judgment vacated, resentenced Downs to the same sentence, and ordered that the Clerk enter a new judgment imposing the same terms as originally imposed. This appeal, for which Downs was appointed new counsel, followed.

Downs challenges the make-up of his jury, arguing that his rights (1) to have his jury represent a fair cross-section and (2) to equal protection were violated because his jury panel was racially imbalanced.[3] As for the fair cross-section argument, although the Supreme Court has held that "'petit juries must be drawn from a source fairly representative of the community,'" the Court has "'impose[d] no requirement that petit juries actually chosen must mirror the community and

---

[3]To the extent Downs urges that the district court should have granted his post-verdict motion for judgment of acquittal, his argument is misplaced as such a motion concerns the sufficiency of the evidence, and has nothing to do with the constitutionality of the jury selection process. See Fed. R. Crim. P. 29(a), (c) (even after jury has rendered a verdict, the district court may set it aside, and "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction" (emphasis added)). Thus, in considering whether to grant a motion for judgment of acquittal, the court considers whether the evidence pertaining to the charges is sufficient.

8

reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition.'" Holland v. Illinois, 493 U.S. 474, 483 (1990) (quoting Taylor v. Louisiana, 419 U.S. 522, 538 (1975)). Thus, we have held that a defendant claiming a violation of the fair cross-section requirement must prove that: (1) the alleged underrepresented group is distinctive; (2) the group is systematically excluded from the jury source; and (3) the underrepresentation is unfair and unreasonable. Berryhill v. Zant, 858 F.2d 633, 638 (11th Cir. 1988).

As for the equal protection claim, under the Equal Protection Clause, a defendant has standing to object to race-based exclusions of jurors whether or not the defendant and the excluded jurors share the same race. Powers v. Ohio, 499 U.S. 400, 415 (1991). "To establish a prima facie claim for an equal protection violation [in the petit jury selection process], a [defendant] must show (1) that he or she is a member of a group capable of being singled out for discriminatory treatment, (2) that members of this group were substantially underrepresented on the venire, and (3) that the venire was selected under a practice providing an opportunity for discrimination." Cunningham v. Zant, 928 F.2d 1006, 1013 (11th Cir. 1991) (habeas context).

Here, Downs did not establish a violation of either his fair cross-section right or his equal protection right. While Downs pointed out to the district court that

9

there were no African-Americans in the jury pool, he failed to show that this exclusion was systematic, and he offered no proof that the underrepresentation was unfair or unreasonable, but rather, simply asked the court to impanel a new jury with African-Americans on it. Cf. Berryhill, 858 F.2d at 638 (defendant claiming fair cross-section violation must show that distinctive group is systematically excluded from the jury source). Moreover, his equal protection claim fails because although he pointed out that African-Americans were not represented on the venire, he made no allegation, never mind a showing, that the venire was selected under a practice providing an opportunity for discrimination. And he requested only that the court impanel a new jury, a request the district court properly denied because Downs had not made the requisite showing for his requested remedy. See Cunningham, 928 F.2d at 1013. Accordingly, we discern no error on either of the grounds Downs asserts concerning the jury selection process.

We likewise are unpersuaded by Downs's claim of prosecutorial misconduct, which he asserts for the first time here. Downs complains of the prosecutor's use of the phrase "you are here because" during the government's opening statement. In short, we can find no error, let alone plain error, on this basis. The phrase "you are here today because" was simply an introductory clause that the government used to describe what the trial was about -- a drug violation --

and what the evidence would show -- the traffic stop that resulted in the finding of crack. Moreover, our review of the opening statement reveals no comment by the government on Downs's guilt or innocence, or phraseology directed to the passions or prejudices of the jury. Cf. Bailey, 893 F.3d at 1400 (government may not make arguments directed to the passions or prejudices of the jury, but may make comments related to the understanding of the law and the facts and the evidence to be adduced at trial). In any event, given the abundant evidence of guilt, even if use of the phrase "you are here because" was somehow improper, Downs has not established plain error that is so obvious that the failure to correct it jeopardized the fairness and integrity of the trial. Cf. Bailey, 893 F.3d at 1400 (any alleged improper comments by government must be considered against the entire record). In short, Downs has not met his burden in demonstrating reversible error based on prosecutorial misconduct.

**AFFIRMED.**